Froessel, J.
Petitioner was appointed to the Municipal Civil Service Commission of the City of Utica on June 1, 1956, and was thereafter elected chairman of said commission (of three members) on June 30, 1956. He served continuously as such member and chairman until his removal by respondent on January 14, 1960. Throughout this period petitioner was president of Local 182 of the Teamsters, Chauffeurs, Warehousemen and Helpers Union. He was connected with the labor movement for at least 25 years.
Respondent was elected Mayor of Utica on November 10, 1959, and assumed office January 1, 1960. By a letter dated December 30, 1959, William A. Belden, business agent for Local 182, requested a meeting with respondent to discuss and negotiate, between the City of Utica and the Department of Public Works employees who were members' of Local 182, an agreement, ‘ ‘ satisfactory to all concerned covering wages, hours and working conditions ”. Respondent, so that he “ may be able to intelligently discuss the matter”, replied on January 2, 1960 seeking further information as to Mr. Belden’s official capacity in Local 182, and the names of city employees who were “ dues paying members in good standing ”. By letter dated January 4 *436 respondent received full answers to Ms inquiries. No further communication was had between respondent or any other city official and any member or officer of Local 182. No meeting was set and no negotiations or contract were entered into.
On January 7 the Civil Service Commission notified the city administration that the summary removal of 83 Department of Public Works employees and their replacement with persons chosen by the department head violated the Civil Service Law and the rules of the commission, and that such new appointees could not be certified on the payroll for payment.
On January 8 petitioner was served with a notice of hearing and statement of charges signed by respondent, directing him to show cause why he should not be removed from office on the sole ground that there is a conflict of interest between his official duties as chairman of the Municipal Civil Service Commission and his position as president of Local 182. The alleged conflict of interest was said to be prohibited by section 19 of the Second Class Cities Law and section 3 of the General City Law.
Before the taking of any testimony, petitioner’s counsel introduced in evidence a resolution of the city employees who were members of the union, adopted the previous day, in which they resolved to withdraw from Local 182, and said local thereupon withdrew its request of December 30, 1959 for recognition and negotiation. Petitioner then moved to have the charges dismissed on the ground that no conflict of interest existed, and that the entire proceeding was premature, since no negotiations had been entered into and no contract between the city and the union had been consummated. - Respondent denied the motions and directed that the hearing proceed. The hearing consisted solely of testimony elicited from petitioner, who was called as a witness by respondent’s counsel, whereupon petitioner was promptly removed.
We are of the opinion that petitioner’s functions as chairman of the Civil Service Commission and president of Local 182 are insufficient as a matter of law to warrant his removal from office. Although subdivision 1 of section 24 of the Civil Service Law authorizes the appointing official-—in this case respondent — to remove a member of- the Civil Service Commission for cause, no adequate cause has been established here. Section 19 of the Second Class Cities Law and section 3 of the General *437 City Law are clearly applicable only to situations where city officers may have a financial interest, direct or indirect, in a contract with the city concerning property or services.
In this respect, it is significant that these sections are entitled ‘1 Restrictions; officers not to be interested in contracts ’ ’ (Second Class Cities Law, § 19); “ City officers not to be interested in contracts ” (General City Law, § 3); and that respondent acknowledges that the cases interpreting these sections ‘ ‘ admittedly are primarily based upon conflicts of interest arising out of contract situations ”. In the first place, since no contract, or even negotiations, had been entered into by the city — indeed, even the request for negotiations was withdrawn — this proceeding would have been premature even if it were assumed that the foregoing sections had any application to petitioner’s situation.
Secondly, it is inconceivable that the Legislature intended these statutes to embrace labor negotiations or agreements. If the statutes were so construed, any officer or employee of the city (§ 19) who belonged to an organization such as the Teachers’ Union of the City of New York, the Transit Workers’ Union, the Police and Fire Department Associations, the Civil Service Employees’ Association, or any,kindred organization, would be subject to discharge if the business agent of his organization asked the city for an increase in salary or wage schedules or other benefits.
Section 15 of the Civil Rights Law guarantees the right to every citizen ‘‘ to appeal to * * * any public officer * * * for the redress of grievances, on account of employment in the civil service of the state or any of its civil divisions or cities ”. Section 108 of the Civil Service Law, which forbids strikes by public employees, expressly provides 1 ‘ that nothing contained in this section shall be construed to limit, impair or affect the right of any public employee to the expression or communication of a view, grievance, complaint or opinion on any matter related to the conditions or compensation of public employment or their betterment, so long as the same is not designed to and does not interfere with the full, faithful and proper performance of the duties of employment”. In Civil Serv. Forum v. New York City Tr. Auth. (4 A D. 2d 117, affd. 4 N Y 2d 866) the Authority was held properly to have entered *438 into an agreement with its employees or their union representatives with respect to wages and working conditions.
There is no evidence here of anything more than a request by Belden, business agent of a union having 4,000 members, for negotiations looking toward getting ‘ ‘ decent wages and working conditions ’’for some 89 Department of Public Works employees, some of whom we are told earned $1.28 per hour. Prior to the time of the hearing, the request for negotiations had been withdrawn. It was in nowise established that petitioner had anything to do with the writing of the business agent’s letter of December 30, 1959.
We are therefore of the opinion that this is not such a case as is contemplated by either section 19 or section 3, and, since those sections constituted the sole cause for removal, the evidence was as a matter of law insufficient. Accordingly, the order appealed from should be reversed, respondent’s determination annulled, the charges dismissed, and petitioner reinstated, without costs.
Chief Judge Desmond (concurring). I concur for reversal but on the single ground that petitioner could not be held, solely because he was president of a union which did not even have an agreement with the city' but was attempting to negotiate, to be “ interested ” in a “ contract ” with the city within the meaning of section 3 of the General City Law and section 19 of the Second Class Cities Law. •
Judges Dye, Fuld, Van Voorhis, Burke and Foster concur with Judge Froessel; Chief Judge Desmond concurs in a separate opinion.
Order reversed, without costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.