66 N.Y.2d 354 (1985)
Richard Stettine, Individually and on Behalf of All Taxpayers Similarly Situated, Appellant,
v.
County of Suffolk et al., Respondents.
Court of Appeals of the State of New York.
Argued September 4, 1985.
Decided November 26, 1985.
William J. Pisarello and Paul W. Thorpe, Jr., for appellant.
Robert M. Calica and Thomas P. Schulz for County of Suffolk and others, respondents.
Michael J. Smith for the Suffolk County Chapter of the Civil Service Employees Association, respondent.
Chief Judge WACHTLER and Judges KAYE and TITONE concur with Judge ALEXANDER; Judge SIMONS dissents and votes to reverse in a separate opinion in which Judges JASEN and MEYER concur.
*356 ALEXANDER, J.
The facts of this case are essentially undisputed. The question that divides the court is whether under those facts and the applicable provisions of General Municipal Law article 18 (General Municipal Law § 800 et seq.), the collective bargaining agreement between the County of Suffolk and the Suffolk County Chapter of the Civil Service Employees Association (CSEA Suffolk) violates General Municipal Law § 801 since it was negotiated by defendant Farnetti at a time when Local Law No. 4 of 1982 provided that all exempt County employees, including Farnetti, would be granted the same salary adjustments as members of bargaining units 2 and 6 of CSEA Suffolk, thereby creating in Farnetti a "prohibited interest" in the contract that would render it void under General Municipal Law § 804. Special Term declared the contract void because of Farnetti's "prohibited interest", but the Appellate Division reversed and declared the contract valid, finding that CSEA Suffolk is a voluntary nonprofit association within the meaning of General Municipal Law § 802 (1) (f) and is therefore excepted from the proscriptions of General Municipal Law § 801. We now affirm.
General Municipal Law § 802 provides that "[t]he provisions of section eight hundred and one of this chapter shall not apply to: 1 * * * f. A contract with a membership corporation or other voluntary non-profit corporation or association". The gravamen of appellants' argument, which the dissent finds determinative, is that while CSEA Suffolk may be a voluntary nonprofit association, it is not the type of voluntary association intended to be excepted under General Municipal Law § 802 (1) (f). They contend that the exception should extend *357 only to nonprofit corporations or associations that are charitable, such as nonprofit hospital corporations, nonprofit animal shelters and volunteer firemen's associations, because it was intended to protect contracts between a municipality and charitable organizations or organizations formed for the public benefit and not contracts entered into with labor unions whose sole purpose is the betterment of their members.
There can be no doubt that CSEA Suffolk is a voluntary nonprofit association. The record establishes that it enjoys nonprofit status by reason of its relationship with Civil Service Employees Association, Inc. (CSEA, Inc.), a State-wide organization and nonprofit corporation as defined in Not-For-Profit Corporation Law § 102 (a) (5) and § 201. Both CSEA, Inc., and CSEA Suffolk enjoy tax-exempt status under Internal Revenue Code (26 USC) § 501 (c) (5), which status is one of the hallmarks of a nonprofit organization (see, Internal Revenue Code § 501 [c]). CSEA Suffolk's voluntary character is clear based on Civil Service Law § 202 which gives public employees the "right to form, join and participate in, or to refrain from forming, joining, or participating in, any employee organization of their own choosing." Although member-oriented employee organizations such as CSEA, Inc., and CSEA Suffolk exist primarily to benefit their membership by enhancing their individual members' economic position with respect to their jobs, this neither militates against their tax-exempt status (see, Albert and Hansell, Tax Status of Modern Labor Unions, 111 U Pa L Rev 137 [1962]; Bittker and Rahdert, Exemption of Non Profit Organizations from Federal Income Taxation, 85 Yale L Rev 299 [1976]) nor provides a sufficient reason to exclude them from the exception of General Municipal Law § 802 (1) (f).
The legislative history of General Municipal Law § 802 (1) (f) does not compel a contrary conclusion as argued by the dissent. The fact that the Comptroller's 1957 report on conflicts of interest on the part of municipal officers and employees included in its proposed legislation language taken from General Municipal Law former § 88 that exempted from its conflict of interest proscriptions contracts with voluntary non-profit corporations or associations "primarily engaged in health or social welfare programs or the community planning for such programs" (see, New York State Dept of Audit and Control, Municipal Officials and Conflicts of Interest: An Analysis of the State Law and a Proposed Statute, 1957, at 78), is unpersuasive in determining the intent of the Legislature in *358 enacting the new article 18 in 1964. Significantly, no reference to the language from former section 88 was included in the Comptroller's 1964 report to the Governor in support of A2807, the bill that became the statute that was finally enacted. (See, Bill Jacket, L 1964, ch 946, Apr. 2, 1964 letter from Arthur Levitt to Governor's counsel.) Thus, the legislative history of section 88, discussed extensively by the dissent, does not provide the conclusive guidance attributed to it. That history was known to the Legislature in 1964 and the fact that those provisions were not carried over to the new legislative enactment provides strong support for the conclusion that the Legislature did not intend to limit the reach and applicability of the exemption for voluntary nonprofit associations as appellants now argue (see, McKinney's Cons Laws of NY, Book 1, Statutes § 193 [a]; Clason v Baldwin, 129 N.Y. 183, 189; De Grauw v Long Is. Elec. Ry. Co., 43 App Div 502, 503, affd 163 N.Y. 597; cf. Munzinger v United Press, 52 App Div 338). Moreover, as conceded by the dissent, an opinion issued shortly after the enactment of article 18 by Comptroller Levitt, whose study and report provided the impetus for the revision and consolidation of the various statutes respecting conflicts of interest and municipal officials, unequivocally expressed the view that collective bargaining agreements were not "contracts" within the meaning of General Municipal Law § 800 (2) (24 Opns St Comp, 1968, p 60). Indeed, the Comptroller stated that "a `contract' contemplates an arrangement between a municipality and a third party whereby a consideration passes from the municipal corporation as a result of goods purchased by it or services rendered to it. Otherwise, relating to the CSEA contract, the highly impractical result would be that every employee of the town who belongs to the CSEA would have an interest in the town-CSEA contract which, although perhaps not prohibited by General Municipal Law § 801 would have to be disclosed by the employee pursuant to § 803. Article 18, in such case, would amount to nothing more than an instrument of harassment without purpose, a result surely not intended by the Legislature" (id., at p 61).
In Matter of De Perno v Dulan (9 N.Y.2d 433), this court had occasion to comment on the legislative intent respecting whether collective bargaining agreements were intended to be included within the sweep of General City Law § 3, a statute from which article 18 also derives, which prohibited city officers from having an interest in a city contract. We said in De Perno that "it is inconceivable that the Legislature intended *359 these statutes to embrace labor negotiations and agreements" (id., at p 437). Our statement in De Perno was known to Comptroller Levitt and the Legislature when article 18 was proposed, considered and enacted into law, yet not a word is to be found in its legislative history indicating that collective bargaining agreements were not to be outside the scope of article 18 or that labor unions were not to be excepted as voluntary nonprofit associations under section 802 (1) (f). And while it is true that the present Comptroller, in a number of more recent opinions, has held that collective bargaining agreements with unions are subject to the provisions of article 18, it does not appear that any of those situations presented the question of whether or not a labor union such as CSEA was a voluntary nonprofit association, a contract with which would come within the exception of General Municipal Law § 802 (1) (f).
Given the legislative history of this statute and the fact that nothing contained therein indicates a legislative intent to include only voluntary nonprofit associations that are "primarily engaged in health or social welfare programs or the community planning for such programs" within the exception of General Municipal Law § 802 (1) (f) and the fact that the omission of that language from the Comptroller's final proposal and the legislation enacted thereon indicates quite the contrary, we decline to read the statute in the restrictive manner urged by appellants and the dissent.
SIMONS, J. (dissenting).
The order of the Appellate Division should be reversed and the judgment of Special Term granting plaintiff summary judgment and declaring the agreement between defendant County and defendant Suffolk County Chapter of CSEA Local 852 void should be reinstated. The agreement is void because it was negotiated by defendant Farnetti, who ostensibly represented the County and its taxpayers, and at the same time had a prohibited interest in the outcome of the negotiations because increases in his own salary were linked to any increase in salary which he agreed the County would pay to employees represented by Suffolk CSEA (see, General Municipal Law § 800 et seq.). In fact, as a result of the eventual agreement, Farnetti's salary was to increase 63% during its term. The majority recognize this conspicuous violation of the conflict of interest statute but hold that the agreement is enforceable because labor organizations are exempted from its provisions by section 802 (1) (f). *360 Statutory exceptions must be strictly construed, however, so that the underlying policy of the legislation is not defeated. Because defendants' claim the benefit of section 802 (1) (f), the burden rests upon them to show that they are within both the letter and spirit of the exception (McKinney's Cons Laws of NY, Book 1, Statutes § 213). Defendants have failed to do so because labor unions are not expressly excepted from the operation of the statute and nothing in the statute's history, the interpretations of the agencies involved with enforcing it or in the purpose underlying it suggests that labor agreements should be excepted generally from conflict of interest proscriptions. That being so, I am at a loss to know why the courts should construe the section broadly and condone a practice cynically indifferent to the public interest. All the more is this so because counsel for the union asserts that the practice is not unique, but indeed quite common among municipalities. I, therefore, dissent.
In 1982, Suffolk County entered into negotiations with bargaining units 2 and 6 of Suffolk CSEA to settle the terms and conditions of employment for represented County employees for the period from January 1, 1982 to December 31, 1985. Chief negotiator for the County was defendant Farnetti, the County Director of Personnel and Labor Relations. By the provisions of Local Law No. 4 of 1982, adopted February 22, 1982, the County Legislature provided that all exempt County employees should be granted the same salary adjustments as those concluded by the agreement for the members of bargaining units 2 and 6. Defendant Farnetti was such an exempt employee. Thus, when he started negotiations in March 1982 and until he agreed to recommend the proposed agreement to the County Executive and the County Legislature in August 1982, Farnetti knew that he and other exempt officials of the County would receive exactly the same salary adjustments as those he agreed to give members of the bargaining units. The agreement was subsequently approved by the County and CSEA in February 1983. A week later, the County Legislature passed Local Law No. 4 of 1983, effective March 21, 1983, amending Local Law No. 4 of 1982 and limiting the salary adjustments for exempt employees to the two-year period January 1, 1982 through December 31, 1983. Their salaries for the remainder of the time were to be separately negotiated.
General Municipal Law § 801 provides that "no municipal officer or employee shall have an interest in any contract with the municipality of which he is an officer or employee," when *361 he has the power to "negotiate, prepare, authorize or approve the contract". The section also provides that the restriction shall not preclude the payment of "lawful compensation and necessary expenses." Interest is defined as "a direct or indirect pecuniary or material benefit accruing to a municipal officer or employee as the result of a contract with the municipality which such officer or employee serves" (General Municipal Law § 800 [3]). Section 804 declares that any contract willfully entered into by or with a municipality in which there is an interest prohibited by the statute is void and unenforceable.
The statute embodies a moral concept as old as the history of mankind, the idea that "No man may serve two masters." Originally such conflicts were governed by common-law rules derived from the law of trusts and agency and which recognized a fiduciary relationship between a municipality and its servants, rules intended to prevent self-dealing by public employees at the people's expense (see, Smith v City of Albany, 61 N.Y. 444; and see generally, New York State Dept of Audit and Control, Municipal Officials and Conflicts of Interest: An Analysis of the State of the Law and a Proposed Statute, 1957, at 44; Levitt, Conflicts of Interest, 1963 Opns St Comp, p 475; Lillich, Municipal Conflicts of Interest: Rights and Remedies Under an Invalid Contract, 27 Fordham L Rev 31 [1958]; Comment, Conflicts of Interest and the Municipal Employee, 20 Buffalo L Rev 487 [1971]). Municipal contracts implicating that relationship are scrutinized closely and for the benefit of the public (Landau v Percacciolo, 66 AD2d 80, 87 [Hopkins, J.], affd 50 N.Y.2d 430; 4 Williston, Contracts § 615A, at 630-631 [3d ed]).
In time the New York rules developed into a hodge podge of highly complex and inconsistent statutory enactments, court decisions and administrative opinions that frequently censured technical, as well as actual, conflicts, and came close to barring all public employees from having any dealings with their governmental units (see generally, New York State Dept of Audit and Control, 1957, op. cit., at 2; Lillich, op. cit., at 31; see also, Levitt, op. cit., at 475-476). General Municipal Law article 18 was enacted in 1964 to correct the situation.
The new statute was formulated by Comptroller Arthur Levitt and his staff after a lengthy investigation and study (see, Levitt, op. cit., at 476; see also, New York State Dept of Audit and Control, 1957, op. cit., at 66-68). It restated the conflict of interest doctrine, attempting to reach only contracting *362 officers involved in an actual clash of duties and also to encourage more citizens to seek and accept "positions on planning boards, airport commissions, and other similar boards and agencies offering little if any monetary award" (see, New York State Dept of Audit and Control, 1957, op. cit., at 67; see also, L 1964, ch 946, § 1). The governing rule was defined in simple terms: no conflict exists unless two factors converge: (1) the employee must have a substantial ability to affect the outcome of the transaction and (2) he must have a substantial private connection with effecting it or be able to gain financially in his employment from it (see, Bill Jacket, L 1964, ch 946 letter of Apr. 2, 1964 from Arthur Levitt to the Governor's counsel).
Although it is disputed, there can be little doubt that Farnetti violated not only the letter of the new statute but the spirit of the general ethical rules on which it is based. He "negotiate[d]" and "approve[d]" this contract and he had a palpable interest in its provisions because under the terms of Local Law No. 4 of 1982 the greater the salary concessions he made to Suffolk CSEA the higher his salary would be. This is precisely the type of conflict the statute was intended to reach, unredeemed by bootstrap arguments that the section entitled Farnetti to receive his "lawful salary." Section 802 (1) (f) should not be interpreted to except or excuse it.
The exception contained in section 802 (1) (f) provides that the conflict provisions of article 18 shall not apply to "f. A contract with a membership corporation or other voluntary non-profit corporation or association". Defendant Suffolk CSEA is neither a membership corporation nor a not-for-profit corporation; it is an unincorporated association governed by the General Associations Law. The issue, then, is whether it should be judged to come within the Legislature's intended purpose to except other voluntary associations. Surely public employee labor unions have many attributes that remove them from the general understanding of voluntary nonprofit associations because, unlike most nonprofit associations, they are authorized and regulated by statute (Civil Service Law § 200 et seq.), they enjoy legislatively protected rights to exclusive representation of their employee members (Civil Service Law § 204), their membership is not voluntary in the customary sense but consists of all public employees within a bargaining unit, a majority of whom have voted to be represented by the union (Civil Service Law § 204) and membership fees are paid by dues deduction for those who elect to pay *363 dues to the union (Civil Service Law § 201 [2] [a]) and by agency shop fee deductions for those who do not (Civil Service Law § 201 [2] [b]). Moreover, the principal function of a labor union is the financial betterment of its members; most unions could not qualify as a not-for-profit corporation under the not-for-profit corporation statute (Not-For-Profit Corporation Law § 102 [a] [5]). Thus, it appears that Suffolk CSEA is not the type of association clearly intended by the terms of the statutory exception and the underlying history of the section must be examined.
The provisions of article 18 were derived from several sources with the idea that the new statute should retain, not abrogate, basic conflicts of interest concepts (see, Legislative Findings, L 1964, ch 946, § 1). The language of section 802 (1) (f) was derived from General Municipal Law § 88[1] (repealed by L 1964, ch 946, § 16) which provided, in pertinent part: "Voluntary non-profit corporations or associations: Notwithstanding the provisions of any other law, statutory or otherwise, to the contrary, no claim, account or demand against, or contract with a municipal corporation, school district, improvement district or a fire district shall be invalid solely by reason of any officer or employee thereof being a member, officer, or a member of the board of directors or trustees, of a voluntary non-profit corporation or association primarily engaged in health or social welfare programs or the community planning for such programs, provided such officer or employee shall not be entitled to any compensation from such non-profit corporation or association." Section 88 was enacted in 1957 at the request of the State Association of Councils and Chests because New York's conflict of interest doctrine at times had been interpreted to mean that a voluntary agency which had a public official on its board could not receive public funds (see, 1957 NY Legis Ann, at 225-226). The memorandum accompanying the measure noted that this misapplication of the conflict of interest law "could result in public officials resigning from the Boards of private social welfare agencies or community planning agencies", thus frustrating cooperation between public and private officials in the solution of community problems (id., at 226; cf. 1957 Opns St Comp No. 57-744, p 228 [holding that a city airport commissioner violated General *364 City Law § 3 when, in his capacity as a funeral director, he buried city welfare recipients for a partial fee]). Governor Harriman, who signed section 88 into law, had vetoed a similar measure at the request of the Department of Audit and Control in 1956 because the exemption for voluntary nonprofit associations set forth in it was too broad. He preferred that the statute "specify either the name or the type of voluntary group to be excepted" (1956 NY Legis Ann, at 509). The Governor signed the bill the following year because the revised language specifically limited the kind of organization that qualified for exemption. His memorandum stated "This bill is applicable to health and social welfare agencies. Its benefits would be extended to officers and employees of cities, towns, villages, school districts, improvement districts and fire districts, as well as to county officers and employees. This is a worthy objective" (see, 1957 NY Legis Ann, at 480). In its 1957 report proposing the new statutory framework that eventually became article 18, Comptroller Levitt's staff recommended that the exemption for voluntary nonprofit organizations and associations found in section 88 be retained substantially as it was.[2] This history presents compelling evidence that present General Municipal Law § 802 (1) (f) was intended to address the same concerns as former section 88 from which it was derived.
The majority claim that the Legislature intended to broaden the exception contained in the new statute to include labor agreements. In support of that position, they rely upon the failure of Comptroller Levitt to limit the exception in his "final report of 1964". The "final report" referred to is a letter from the Comptroller to the Governor found in the bill jacket and submitted after the bill had been passed by the Legislature. Nothing in it supports the majority's claim and, indeed, after the bill became law, Comptroller Levitt consistently construed the section as applying to charitable and social service groups. Thus, in the public relations pamphlet explaining article 18 and distributed by the Comptroller to all municipalities *365 in August 1964, the explanation of "who is affected" by the statute says:
"If you're an officer or employee of a county, city, town, village, fire district, or school district (outside of the City of New York), the new law applies to you  whether you are a paid or unpaid employee or whether you're just a member of a municipal board, commission, or agency. It applies to you if you're an employee of a town or county improvement district, a district corporation, or other district or joint service set up to carry on local improvements or services (but not a public authority). The law also applies to you if you work for a consolidated health district, a county vocational education and extension board, a public library, a board of cooperative education services, or an urban renewal agency.

"But the law does not apply solely because you're a volunteer fireman (not a chief or assistant chief engineer) or a civil defense volunteer." (See, New York State Dept of Audit and Control, Aug. 1964, at 2 [emphasis supplied].)
In the same pamphlet, the exception contained in section 802 (1) (f) is explained in the following manner: "Contracts with membership corporations or nonprofit organizations. If you have an interest in an organization  say, a fire company or a voluntary hospital  and it has a contract with your municipality, the contract is permitted." (Id., at 5.)
The State Comptroller and other State officers have also construed the statute in several published opinions. Inasmuch as the Department of Audit and Control is charged with reviewing municipal contracts and auditing municipal finances, the interpretation the Comptroller places on the statute is entitled not only to the respect accorded opinions of State officers generally, but also to the deference we accord interpretations made by those charged with enforcing a statute (see, Matter of Howard v Wyman, 28 N.Y.2d 434). Significantly, the Comptroller has applied section 802 (1) (f) only to voluntary, nonprofit organizations performing a charitable or community service (see, 1983 Opns St Comp No. 83-112 [church]; 1981 Opns St Comp No. 81-115 [nonprofit animal shelter]; 1974 Opns St Comp No. 74-469, p 393; and 1966 Opns St Comp No. 66-440, p 365 [volunteer fire department]; 1973 Opns St Comp No. 73-37 [nonprofit hospital corporation]; 1973 Opns St Comp No. 73-306, p 48 [historical society]; 1966 Opns St Comp No. 66-472, p 393 [firemen's benevolent association]). The exemption has been similarly construed by the Attorney-General *366 (see, 1965 Opns Atty Gen 140 [community college association]) and the State Education Department (Matter of Pre-Schoolers' Workshop, 16 Ed Dept Rep 331, 333 [1977] [synagogue]). Indeed, there appears to be no reported opinion of a State official holding that agreements with labor organizations are exempt from the provisions of article 18 by section 802 (1) (f). The Comptroller has interpreted a conflict involving a labor agreement with reference to other provisions of article 18, holding that although the attorney's agreement under review might be unethical, it was not a "contract" within the meaning of the statutory provisions (1968 Opns St Comp No. 68-46, p 60). The narrow view the Comptroller took in that opinion was consistent with dicta found in our prior decision of Matter of De Perno v Dulan (9 N.Y.2d 433), cited by the majority, but he has expressly superseded it in subsequent opinions which hold that article 18 does apply to labor contracts (see, 1981 Opns St Comp No. 81-415; see also, 1983 Opns St Comp No. 83-122; 1975 Opns Atty Gen 108-109). Moreover, the 1968 opinion was rendered shortly after the statute was enacted and at a time when very few employees outside of New York City (the employees to whom article 18 applies) belonged to labor unions (see generally, Koretz, Labor Relations Law, 20 Syracuse L Rev 258 [1968]). Indeed, the Taylor Law (Public Employees' Fair Employment Act, Civil Service Law § 200 et seq.), which established New York's present policy toward public employee organizations and the mechanism for collective bargaining in the public sector was not adopted until 1967, three years after article 18 was passed and one year before the Comptroller's opinion. It is also notable that at the time article 18 was enacted, the Department of Civil Service, the department generally responsible for matters involving public employees and their representation (see, Civil Service Law § 205 [1]), voiced no opinion on the proposed legislation because it had no experience with the problems the bill sought to address (see, Bill Jacket, L 1964, ch 946 letter of Apr. 9, 1964, Mary Goode Krone, President of Civil Service Commission). In view of the limited activity of public employee unions at the time, it is hardly surprising that the Comptroller construed the new statute as he did or that his successor superseded the 1968 ruling and applied article 18 to labor contracts when representation of public employees upstate became prevalent.
Finally, no reported decision of the New York courts, before the Appellate Division decision in this case, has held the labor *367 unions are organizations entitled to exemption from the conflict of interest rules found in article 18 or that they come within the definition of voluntary associations found in General Municipal Law former § 88.
In finding Suffolk CSEA a voluntary association within the meaning of section 802 (1) (f), the Appellate Division relied heavily on the status of its parent, CSEA, Inc., as a not-for-profit corporation. CSEA, Inc., however, is not a party to this litigation; it was not a participant in negotiations (indeed it did not have the power to negotiate this contract) and, as Special Term found, it has no responsibility under the contract. Its status cannot provide an exception for Suffolk CSEA. The majority in this court rely upon the tax-exempt status of both CSEA, Inc. and Suffolk CSEA, but the tax-exempt status of an organization is irrelevant in determining whether it is a voluntary association of the type intended by the Legislature. Manifestly, the Legislature enacted the exception for the benefit of charitable and service organizations, not labor unions.
In sum, the conflict of interest statute does not explicitly except labor organizations from its provisions, and nothing in the prior statutes from which article 18 was derived, the predrafting hearings or reports of Comptroller Levitt, the legislative history or the Governor's records gives the slightest hint that it was intended or designed to exempt labor organizations from conflict of interest proscriptions. In addition, no court or State official responsible for enforcing the statute has interpreted it as exempting labor organizations from its terms. In the face of that evidence, we should not ignore the self-dealing established by the evidence in this record, and apparently common in other municipalities, and enforce the contract. Presumably, the majority is moved by the possibility of injury to the represented employees if the contract is declared void. Plaintiffs do not seek retroactive recoupment of the wages paid, however, and the contract expires by its terms on December 31, 1985. There are remedies available to protect the employees' rights for the short time remaining (see generally, Lillich, op. cit.). Thus, there is no reason why we should deny plaintiffs' relief, thereby ignoring the violation of the public trust which occurred in this case and encouraging such practices in the future.
Order affirmed, with costs.
NOTES
[1] The other statutes from which article 18 was derived were: County Law § 412; Education Law § 1617; Local Finance Law § 60.20; Social Welfare Law §§ 147, 186-a to 186-c; Town Law §§ 104, 176 (31); Village Law § 128 (5); § 332.
[2] Section 6 (a) of the proposed statute exempted: "(a) Contracts of any municipality with a voluntary non-profit corporation or association primarily engaged in health or social welfare programs or the community planning for such programs, provided the interested public representative is not entitled to any compensation from such non-profit corporation or association." (See, New York State Dept of Audit and Control, Municipal Officials and Conflicts of Interest: An Analysis of the State of the Law and a Proposed Statute, 1957, at 67.)